```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                          BLUEFIELD
```

EDDIE G. WASHINGTON,

     Plaintiff,

v.                                    Civil Action No. 1:07-0513

GEORGE JANICE, Warden,
Stevens Correctional
Center, et al.,

     Defendants,
and

DONALD ROSENBERGER,

     Plaintiff,

v.                                    Civil Action No. 1:07-0629

GEORGE JANICE, Warden,
Stevens Correctional
Center, et al.,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

     Pending before the court were 1) defendant Thomas

Mutter's motion to dismiss (doc. #38); and 2) the second motion

to dismiss or, in the alternative, for summary judgment filed by

defendants George Janice, Donald Bowen, Stevens Correctional

Center, and the McDowell County Commission (doc. #41).  By

Judgment Order entered September 30, 2009, the motions were

GRANTED insofar as the court determined that defendants Janice,

Bowen, and Mutter were entitled to qualified immunity and that,

given the individual defendants' dismissal from the case,

punitive damages were not recoverable.  In all other respects,

the motions were DENIED.  The reasons for those decisions follow.

## I.  **Background**

Plaintiffs Eddie Washington and Donald Rosenberger were incarcerated at Steven Correctional Center ("Stevens") in Welch, West Virginia.  According to the allegations in the complaints[1] filed pursuant to 42 U.S.C. § 1983, on May 24, 2007, Washington and Rosenberger, along with several other inmates were taken from Stevens Correctional Center to work on a road crew headed by defendant Thomas Mutter, a Stevens correctional officer. Plaintiffs allege they were taken to private property owned by Lt. Donald Bowen, also a Stevens employee.  The complaints further allege that plaintiffs were forced to dig a grave on Bowen's property while his family members looked on and directed racist and verbally abusive statements at plaintiffs.  According to the complaints, Mutter did not make any abusive statements himself, although he laughed when they were made and did nothing to discourage those persons making the statements.

Washington's complaint names George Janice as Warden of Stevens Correctional Center, Lt. Don Bowen, and Thomas Mutter as defendants and seeks "compensatory and punitive damages, all related medical expenses that may occur as a result to my hernia

---

[1] On October 9, 2008, Magistrate Judge VanDervort consolidated Washington's complaint and the civil action filed by Rosenberger, finding that both cases involve common questions of law and fact.

and a stern reprimand to all parties for violating the civil rights of others, and a disability rating for my injuries sustained and or aggravated due to this incident." Washington Complaint § 5.

The defendants named in Rosenberger's complaint are Stevens Correctional Center, Thomas Mutter, the Department of Corrections, and the McDowell County Commission. In his prayer for relief, Rosenberger "ask[s] that this doesn't happen again or in the near future, that at any time any inmate doesn't have to dig another grave again ever. And that our Constitutional Rights aren't violated in anyway." Rosenberger Complaint at 5. Rosenberger seeks compensatory damages in the amount of $500.00, punitive damages, and $1,000,000 for "emotional and mental anguish." See id. at 5-6.

Defendant Mutter[2] contends that dismissal of the complaints as to him is warranted because 1) he is entitled to qualified immunity; and 2) pursuant to 42 U.S.C. § 1997e, in the absence of physical injury, plaintiffs may not pursue their action under 42 U.S.C. § 1983.

---

[2] On November 12, 2008, Mutter filed a "Waiver of Reply" in which he contends that "no pre-service screening pursuant to 42 U.S.C. § 1997e(g)(1) has been undertaken." Mutter asks the court to "conduct a review of the Plaintiffs' Complaints and dismiss same with prejudice." The court directs Mutter's attention to 1) Magistrate Judge VanDervort's Order of December 6, 2007, in which he screened plaintiff Washington's complaint, and 2) Magistrate Judge VanDervort's Order of October 9, 2008, in which he screened plaintiff Rosenberger's complaint.

The remaining defendants argue that they should be dismissed or granted summary judgment for the following reasons:

1)      the claims against Janice and Bowen should be dismissed because they are for supervisory liability;

2)      the claims against all defendants should be dismissed because the Prison Litigation Reform Act precludes recovery for emotional and mental injury arising from conditions of confinement without accompanying physical injury;

3)      the claims for punitive damages should be dismissed because they are precluded by the PLRA;

4)      the claims for injunctive relief are moot;

5)      Washington's claim for a disability rating must be dismissed because he has not exhausted his administrative remedies;

6)      Stevens Correctional Center is entitled to dismissal or summary judgment because it is not a "person" for purposes of 42 U.S.C. § 1983; and

7)      defendants Janice and Bowen should be dismissed because they are entitled to qualified immunity.

Plaintiffs argue that dismissal or summary judgment is inappropriate at this stage given that no discovery has taken place.  The court agrees with plaintiffs in part.  A number of the grounds urged for dismissal are better resolved at the summary judgment stage.  For example, defendants urge dismissal because, according to them, plaintiffs did not suffer any physical injury such as would be required under the PLRA.

4

However, there is little, if any, <u>evidence</u> to enable the court to make this determination.  Likewise, there appears to be a dispute between the parties as to whether Stevens Correctional Center is a "person" for purposes of § 1983 and this dispute hinges on facts that are not in evidence.

On the other hand, "[b]ecause qualified immunity is `an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)(emphasis deleted)).  As such, the Court has repeatedly "stressed the importance of resolving immunity questions as the earliest possible stage in litigation." <u>Id.</u> (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (per curiam)).  Further, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).

For these reasons, the court has DENIED the motions to dismiss and/or for summary judgment insofar as they seek dismissal or judgment on grounds other than as discussed more fully below.

## II.  __Standard of Review__

A.    Motion to Dismiss

"[A] motion to dismiss for failure to state a claim for
relief should not be granted unless it appears to a certainty
that the plaintiff would be entitled to no relief under any state
of facts which could be proved in support of his claim." Rogers
v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir.
1989) (citation omitted) (quoting Conley v. Gibson, 355 U.S. 41,
48 (1957), and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir.
1969)).  "In considering a motion to dismiss, the court should
accept as true all well-pleaded allegations and should view the
complaint in a light most favorable to the plaintiff." Mylan
Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993);
see also Ibarra v. United States, 120 F.3d 474, 474 (4th Cir.
1997).

B.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered
> forthwith if the pleadings, depositions,
> answers to interrogatories, and
> admissions on file, together with the
> affidavits, if any, show that there is
> no genuine issue as to any material fact
> and that the moving party is entitled to
> a judgment as a matter of law.

The moving party has the burden of establishing that there is no
genuine issue as to any material fact. Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  This burden can be met by showing that

6

the nonmoving party has failed to prove an essential element of
the nonmoving party's case for which the nonmoving party will
bear the burden of proof at trial.  Id. at 322.  If the moving
party meets this burden, according to the United States Supreme
Court, "there can be 'no genuine issue as to any material fact,'
since a complete failure of proof concerning an essential element
of the nonmoving party's case necessarily renders all other facts
immaterial."  Id. at 323.

     Once the moving party has met this burden, the burden
shifts to the nonmoving party to produce sufficient evidence for
a jury to return a verdict for that party.

> The mere existence of a scintilla of
> evidence in support of the plaintiff's
> position will be insufficient; there
> must be evidence on which the jury could
> reasonably find for the plaintiff.  The
> judge's inquiry, therefore, unavoidably
> asks whether reasonable jurors could
> find, by a preponderance of the
> evidence, that the plaintiff is entitled
> to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If
the evidence is merely colorable, or is not significantly
probative, summary judgment may be granted."  Id. at 250-51.

### III.  Analysis

     In order to prevail on their civil rights claims under 42
U.S.C. § 1983, plaintiffs must establish that a person acting
under the color of state law deprived them of a right secured by

7

the Constitution or laws of the United States.  <u>Everson v. Leis</u>,
556 F.3d 484, 493 (6th Cir. 2009).

A.      Qualified Immunity

        Defendants Mutter, Janice, and Bowen contend that they
are entitled to qualified immunity.  The court agrees.

        The defense of qualified immunity shields a government
official from liability for civil monetary damages if the
officer's conduct does not violate clearly established statutory
or constitutional rights of which a reasonable person would have
known.  <u>Wiley v. Doory</u>, 14 F.3d 993, 995 (4th Cir. 1994); <u>Smook</u>
<u>v. Hall</u>, 460 F.3d 768, 777 (6th Cir. 2006).  The doctrine of
qualified immunity protects government officials "from liability
for civil damages insofar as their conduct does not violate
clearly established statutory or constitutional rights of which a
reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457
U.S. 800, 818 (1982).

        1.   *Determining "Capacity"*

        Plaintiffs have not expressly designated whether they are
suing Mutter, Janice, and Bowen in their official or personal
capacities.  When the capacity in which a plaintiff has sued a
government official is not plainly stated, the Fourth Circuit has
directed lower courts to "examine the nature of the plaintiff's
claims, the relief sought, and the course of proceedings to
determine" the capacity in which the defendants are sued.  <u>Biggs</u>

v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995); see also Lavender v.
West Virginia Req'l Jail and Corr. Facility Auth., 2008 WL
313957, *3 (S.D.W. Va. 2008).  Factors to be considered include
(1) whether the official acted in accordance with a governmental
policy or custom, (2) the relief sought, and (3) the defenses
raised.  See id.

Under the Biggs test, the court concludes that plaintiffs
have sued Janice, Bowen, and Mutter in their individual
capacities.  Here, there is no claim that the individual
defendants were acting pursuant to a governmental policy or
custom.  Also, plaintiffs have requested awards of both
compensatory and punitive damages,[3] and "[i]n a § 1983 action,
punitive damages are only available from government officials
when they are sued in their individual capacities."  Young
Apartments, Inc. v. Town of Jupiter, FL, 529 F.3d 1027, 1047
(11th Cir. 2008); see also Smith v. Wade, 461 U.S. 30, 35 (1983)
("Individual public officers [are] liable for punitive damages
for their misconduct on the same basis as other individual
defendants" where "the defendant's conduct is shown to be
motivated by evil motive or intent, or when it involves reckless

---

[3] Punitive damages may be recovered under Section 1983 "when
the defendant's conduct is shown to be motivated by evil motive
or intent, or when it involves reckless or callous indifference
to the federally protected rights of others."  Smith v. Wade, 461
U.S. 30, 56 (1983); Tasker v. Moore, 738 F. Supp. 1005, 1015-16
(S.D.W. Va. 1990).

or callous indifference to the federally protected rights of others."); Biggs, 66 F.3d at 61 ("Another indication that suit has been brought against a state actor personally may be a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits.").

Finally, Mutter, Janice, and Bowen have all asserted a defense of qualified immunity and plaintiffs have argued that it is inapplicable for various reasons.  Plaintiffs have not alleged, however, that the individual defendants are being sued in their official capacities which would foreclose the availability of the defense of qualified immunity.  See id. ("[Q]ualified immunity is unavailable in official capacity suits.").  The foregoing demonstrates that all parties are under the impression that Mutter, Janice, and Bowen are being sued in their personal capacity.

    2.  *Framework for Evaluating Claims of Qualified Immunity*

In Saucier v. Katz, 533 U.S. 194, 195 (2002), the Supreme Court mandated a two-step sequence for resolving the qualified immunity claims of government officials.

> First, a court must decide whether the facts that
> a plaintiff has alleged (see Fed. Rules Civ.
> Proc. 12(b)(6), (c)) or shown (see Rules 50, 56)
> make out a violation of a constitutional right.
> 533 U.S., at 201, 121 S. Ct. 2151.  Second, if
> the plaintiff has satisfied this first step, the
> court must decide whether the right at issue was
> "clearly established" at the time of defendant's
> alleged misconduct.  Ibid.  Qualified immunity is

10

> applicable unless the official's conduct violated
> a clearly established constitutional right.

Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009).  Just this
year, the Court held that courts may exercise discretion in
deciding which of the two Saucier prongs "should be addressed
first in light of the circumstances in the particular case at
hand."  See id. at 818.  "[T]he rigid Saucier procedure comes
with a price.  The procedure sometimes results in a substantial
expenditure of scarce judicial resources on difficult questions
that have no outcome on the case.  There are cases in which it is
plain that a constitutional right is not clearly established but
far from obvious whether in fact there is such a right."  Id.

Under the first prong, a court must determine whether the
facts as alleged, taken in the light most favorable to plaintiff,
demonstrate the violation of a constitutional right.  Saucier,
533 U.S. at 201 ("Taken in the light most favorable to the party
asserting the injury, do the facts alleged show the [state
actor's] conduct violated a constitutional right?").  If the
allegations do not give rise to a constitutional violation, no
further inquiry is necessary.  Id.

A right is clearly established when it has been
authoritatively decided by the Supreme Court, the appropriate
United States Court of Appeals, or the highest court of the state
in which the action arose.  Edwards v. City of Goldsboro, 178
F.3d 231, 251 (4th Cir. 1999).  The relevant, dispositive inquiry

11

is whether it would be clear to a reasonable person that the conduct was unlawful in the situation he confronted.  <u>Saucier v. Katz</u>, 533 U.S. 194, 195 (2002).  "Clearly established" does not mean that "the very action in question has previously been held unlawful," but requires the unlawfulness of the conduct to be apparent "in light of preexisting law." <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999).

> The responsibility imposed on public officials to comply with constitutional requirements is commensurate with the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct.  It is not measured by the collective hindsight of skilled lawyers and learned judges. * * * "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." <u>Maciarello v. Sumner</u>, 973 F.2d 295, 295 (4th Cir. 1992), <u>cert. denied</u>, 506 U.S. 1080 (1993).

<u>Jackson v. Long</u>, 102 F.3d 722, 730-31 (4th Cir. 1996); <u>see also</u> <u>Williams v. Hansen</u>, 326 F.3d 569, 578-79 (4th Cir. 2003) (holding that for purposes of qualified immunity, executive actors are not required to predict how the courts will resolve legal issues). "In determining whether the specific right allegedly violated was `clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.'" <u>Wiley v. Doory</u>, 14 F.3d 993, 995 (4th Cir. 1994)(quoting <u>Pritchett v. Alford</u>, 973 F.2d 307, 312 (4th Cir. 1992)).

3.   <u>Eighth Amendment</u>

It is the position of the plaintiffs that their Eighth
Amendment right to be free from cruel and unusual punishment was
violated.  According to plaintiffs, their claims "are that prison
officials intentionally (read deliberately) sent the plaintiffs
out on a work detail to private property, to dig a grave for the
family member of one of the prison guards before belligerent and
threatening family members on an exceedingly hot day."

Punishments prohibited under the Eighth Amendment include
those which "involve the unnecessary and wanton infliction of
pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976)(quoting <u>Gregg
v. Georgia</u>, 428 U.S. 153, 173 (1976)). "It not only outlaws
excessive sentences but also protects inmates from inhumane
treatment and conditions while imprisoned." <u>Williams v.
Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth
Amendment, sentenced prisoners are entitled to "adequate food,
clothing, shelter, sanitation, medical care and personal safety."
<u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), <u>rev'd on other
grounds</u>, Bell v. Wolfish, 441 U.S. 520 (1979).  Thus, sentenced
prisoners are entitled to reasonable protection from harm
at the hands of fellow inmates and prison officials under the
Eighth Amendment.  See <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-34
(1994); <u>Trop v. Dulles</u>, 356 U.S. 86, 102 (1958); <u>Woodhous v.
Commonwealth of Virginia</u>, 487 F.2d 889, 890 (4th Cir. 1973).

13

Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment.  See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir.), cert. denied, 502 U.S. 828 (1991)(stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety).

        To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard.  Wilson v. Seiter, 501 U.S. 294, 297-99 (1991).  A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298 (citing Rhodes v. Chapman, 452 U.S. at 347).  "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with

14

a sufficiently culpable state of mind.'" <u>Shakka v. Smith</u>, 71
F.3d 162, 166 (4th Cir. 1995)(quoting <u>Strickler v. Waters</u>, 989
F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)); <u>see also</u>
<u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1991)("In <u>Strickler</u>,
we held that a prisoner must suffer 'serious or significant
physical or mental injury' in order to be 'subjected to cruel and
unusual punishment within the meaning of the' Eighth Amendment.")

Even viewing the facts as alleged by plaintiffs in the
light most favorable to them, the court is unable to say that
they have shown their Eighth Amendment rights were violated.  In
sum, the injustices allegedly committed upon plaintiffs by the
individual defendants do not come close to the type of conduct
deemed to be cruel and unusual punishment within the meaning of
the Eighth Amendment.  As discussed below in Section 4, an inmate
does not have a <u>constitutional</u> right not to be forced to perform
work on private property.

As to the threats and harassment, plaintiffs contend that
it was Bowen's family members making the threats.  However,
Bowen's family members are not "state actors" for purposes of §
1983.  Furthermore, even if Mutter had been the one making the
hostile and threatening remarks, such conduct does not rise to
the level of an Eighth Amendment violation.  The verbal
harassment or abuse of an inmate by prison guards, without more,

is insufficient to state a constitutional violation.  Ivey v.
Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); see also Lindsey
v. O'Connor, 2009 WL 1316087, at * 1 (3d Cir. 2009)(holding that
"[v]erbal harassment of a prisoner, although distasteful, does
not violate the Eighth Amendment"); Purcell v. Coughlin, 790
F.2d 263, 265 (2d Cir. 1986)(stating that name-calling does not
rise to the level of a constitutional violation); Collins v.
Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a
sheriff's threats to hang a prisoner were insufficient to state a
constitutional deprivation); Owens v. Johnson, 2000 WL 876766, *2
(6th Cir. 2000) ("The occasional or sporadic use of racial slurs,
although unprofessional and reprehensible, does not rise to a
level of constitutional magnitude."); Keyes v. City of Albany,
594 F. Supp. 1147, 1155 (N.D.N.Y. 1984) ("verbal abuse, including
vile language and racial epithets" directed at bystanders during
an arrest does not violate their constitutional rights).

     As to the nature of the work itself, there is no
constitutional prohibition against requiring an inmate to dig a
grave.  Further, the working conditions at issue herein do not
establish a sufficiently serious deprivation or that defendants
acted with deliberate indifference to plaintiffs' health and
safety under a subjective standard.  According to plaintiffs,
they worked for approximately eight hours on the day in question,
from 10:00 a.m. to 6:00 p.m., and it was hot and sunny outside.

16

During this time, plaintiffs were given a break to eat lunch. There is no allegation that plaintiffs were not given additional breaks, as plaintiff Washington contends that he was able to walk away at one point and "set down alone to calm down."  Plaintiffs do not allege that the physical labor required was beyond their strength and, significantly, plaintiffs have not alleged a physical injury.[4]

Given that numerous individuals who are not incarcerated work an eight-hour day outdoors on a regular basis – such as road crews, construction workers, and landscape workers – , there is no Eighth Amendment violation in requiring inmates to do the same.  See Johnson v. Townsend, 2008 WL 3165927, *4 (3d Cir. 2008) (finding no Eighth Amendment violation where prisoner was forced to work 9.5 hour days, seven days a week absent showing that physical labor was beyond his strength, endangered his life or health, caused undue pain, or that work assignment was punitive in nature).  Likewise, "[c]ourts have generally rejected Eighth Amendment claims based on inmates' exposure to the

---

[4] Plaintiff Washington alleges that one of Bowen's relatives told him to get into the hole he was digging and get a jackhammer.  According to Washington, he told the relative that he couldn't – he had a hernia.  The relative berated plaintiff and the two men got into a "verbal confrontation."  Washington states that he removed himself from the confrontation. Significantly, he does not allege that he ever got the jackhammer, that Mutter told him to do anything that would violate any medical restriction, or that he suffered physical injury.

elements while working outside." <u>Carter v. Pink Palace Museum</u>, 2007 WL 2426429, *3 n.4 (W.D. Tenn. 2007) (citing authorities).

Based on the foregoing, the court finds that plaintiffs have failed to allege both a "sufficiently serious" deprivation under an objective standard or that prison officials acted with "deliberate indifference" to the their health and safety under a subjective standard.  Accordingly, because the facts alleged herein do make out a violation of the Eighth Amendment, the individual defendants are entitled to qualified immunity on that claim.

4.  *Thirteenth Amendment*

Plaintiffs have also contended that their rights under the Thirteenth Amendment were violated by the conduct described herein.  The Thirteenth Amendment provides in pertinent part that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States or any place subject to their jurisdiction."  Therefore, "when a person is duly tried, convicted and sentenced in accordance with the law, no issue of peonage or involuntary servitude arise." <u>Ali v. Johnson</u>, 259 F.3d 317, 318 (5th Cir. 2001) (quoting <u>Draper v. Rhay</u>, 315 F.2d 193, 197 (9th Cir.), <u>cert. denied</u>, 375 U.S. 915 (1963)).

18

In Murray v. Mississippi Dept. of Corrections, 911 F.2d 1167, 1168 (5th Cir. 1990), the Fifth Circuit declined to create a private property exception to its prior holdings that, under the Thirteenth Amendment, an inmate may be compelled to work without pay despite the fact that state law[5] prohibited inmates from working on private property.  According to the Murray court:

> The thirteenth amendment specifically allows involuntary servitude as punishment after conviction of a crime . . . . Furthermore, we can find no basis from which to conclude that working an inmate on private property is any more violative of constitutional or civil rights than working inmates on public property. . . . We hold that an inmate is not entitled to damages for violation of his constitutional or civil rights on the basis that he was compelled to work on private property without pay.

Id., see also Williams v. City of DeQuincy, 2006 WL 3747449, *2 (W.D. La. 2006) (no viable Thirteenth Amendment claim where inmate forced to work on private property rather than public property).

In Anderson v. Morgan, 1990 WL 29173, *1 (4th Cir. 1990) (unpublished), a case cited by plaintiffs, the Fourth Circuit

---

[5] The State of Mississippi was prohibited from working inmates on private property.  Miss. Code Ann. § 47-5-133. West Virginia has a similar statute.  Section 17-15-4(f) of the West Virginia Code prohibits "the use of inmate labor for private projects or as contract employees of for profit businesses." Plaintiffs may have a state-law cause of action premised on the alleged violation of W. Va. Code § 17-15-4(f).  But, as in Murray, that issue is not before this court and, therefore, the court expresses no opinion whether violation of the statute gives plaintiffs a private cause of action.

19

noted that "[f]orcing an inmate to perform work that inures solely to an individual's private benefit, as opposed to the public benefit, is not as plainly allowed under the Thirteenth Amendment's exception for work imposed as punishment for crime." However, in the almost twenty years since <u>Anderson</u> was decided, the Fourth Circuit has yet to definitively rule that forcing an inmate to work on private property violates the Thirteenth Amendment.

Applying the principles that govern qualified immunity determinations to this case, it is clear that the facts plaintiffs have alleged do not make out a Thirteenth Amendment violation. <u>Anderson</u> is the only case cited by plaintiffs – and the court's independent research has found no other authority – even remotely suggesting that forcing inmates to perform work on private property runs afoul of the Thirteenth Amendment. While there is some authority for the notion that "lucid and unambiguous dicta concerning the existence of a constitutional right can without more make that right `clearly established' for purposes of a qualified immunity analysis," <u>Wilkinson v. Russell</u>, 182 F.3d 89, 112 (2d Cir. 1999) (Calabresi, J., concurring); <u>see also</u> <u>Hanes v. Zurich</u>, 578 F.3d 491, 496 (7th Cir. 2009) ("[E]ven dicta may clearly establish a right."), the one-sentence statement in <u>Anderson</u> upon which plaintiffs rely falls short.

20

Furthermore, even assuming that plaintiffs are correct that, under <u>Anderson</u>, the facts alleged herein do make out the violation of a constitutional right, the right allegedly violated was not clearly established.  Given the lack of discussion or analysis in <u>Anderson</u>, there is no way that a state actor or a reasonable person could discern they were violating a clearly established constitutional right.  <u>See</u> <u>Atterberry v. Sherman</u>, 453 F.3d 823, 827 (7th Cir. 2006).  This is especially true given the aforementioned authorities, such as <u>Murray v. Mississippi Dept. of Corrections</u>, 911 F.2d 1167, 1168 (5th Cir. 1990), which explicitly hold that forcing an inmate to work on private property does not violate the Thirteenth Amendment.

B.    Punitive Damages

"[I]t is well-settled that local government entities are immune from punitive damages in action[s] brought pursuant to 42 U.S.C. § 1983."  <u>Shaw v. Coosa County Comm'n</u>, 330 F. Supp. 2d 1285, 1287 (M.D. Ala. 2004); <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983").  Given that punitive damages are not available against a municipality and the individual defendants having been dismissed, defendants' motion for summary judgment as to plaintiffs' request for punitive damages is granted.

## IV.  <u>Conclusion</u>

For the foregoing reasons, defendants' motions to dismiss or, in the alternative, for summary judgment are GRANTED insofar as the court has determined that defendants Janice, Bowen, and Mutter are entitled to qualified immunity and that, given the individual defendants' dismissal from the case, punitive damages are not recoverable.  In all other respects, the motions are DENIED.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 16th day of December, 2009.

ENTER:

David A. Faber
Senior United States District Judge